2026 IL App (1st) 240089-U

No. 1-24-0089

Filed July 29, 2026

Third Division

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 6520 |
| | ) | |
| ANTWAN ELLIOTT, | ) | Honorable |
| | ) | Stanely J. Sacks, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE MARTIN delivered the judgment of the court.
Justices Lampkin and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's postconviction petition failed to state an arguable constitutional claim.

¶ 2    Antwan Elliott appeals the summary dismissal of his postconviction petition. He requests that we reverse and remand for further proceedings where: (1) his petition made an arguable claim that his appellate counsel was ineffective for failing to challenge the trial court's admission of certain gang-related evidence obtained from his cell phone; (2) his appellate counsel was ineffective for failing to argue that the trial court was biased; and (3) dismissal was improper when

it appeared that referenced attachments had been lost in mailing or mishandled. We reject these arguments and affirm the circuit court's summary dismissal of the petition.[1]

¶ 3                                I. BACKGROUND

¶ 4        Elliott was convicted of first degree murder for the shooting death of Giovanni Matos and sentenced to 70 years' imprisonment. We summarized the trial evidence in our prior opinion affirming his conviction and sentence on direct appeal. See *People v. Elliott*, 2022 IL App (1st) 192294. Here, we recount only the evidence and procedural history necessary to resolve the issues on appeal.

¶ 5        Before trial, the State filed a motion *in limine* to admit gang evidence. The motion indicated that evidence of Elliott's membership in the Milwaukee Kings street gang was relevant to show his motive for shooting Matos, who was a member of the rival Simon City Royals. Elliott's trial counsel[2] filed an opposing motion *in limine*, requesting the court to exclude gang evidence. The defense argued that the evidence was hearsay and speculative, as it relied on the testimony of Jose Figueroa, who would testify that Elliott was a Milwaukee King, but was formerly a Latin Brother known as "B-Boy." Thus, the defense contended that the prejudicial effect of Figueroa's testimony would substantially outweigh its probative value.

¶ 6        At a hearing on the opposing motions, the trial court noted that gang evidence can be prejudicial due to the public's negative view of street gangs, but it can be admitted to show a motive for an otherwise inexplicable act. See *People v. Weston*, 2011 IL App (1st) 092432, ¶ 22. That purpose was implicated in this case, the court reasoned, because without evidence of Elliott's and Matos's respective membership in rival gangs, "all you have is somebody getting out of a car

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.
[2]Elliott was represented by multiple assistant public defenders (APD). We refer to them collectively as his trial counsel.

and shooting and that's it." Thus, the court found the gang evidence's probative value outweighed its prejudicial effect and granted the State's motion to admit.

¶ 7    A year of continuances followed. One week before trial was to begin, the State tendered additional discovery to the defense, consisting of voluminous information extracted from Elliott's cell phone, which was recovered during Elliott's arrest years earlier. Defense counsel filed a motion to bar the State from introducing any evidence obtained from the cell phone, since the State produced the material just before trial. The court denied the motion but continued the trial date to provide the defense time to review the new evidence.

¶ 8    Subsequently, defense counsel filed a motion *in limine* to exclude various text messages and internet searches recovered from the cell phone. The challenged materials were as follows:

¶ 9    In a Facebook chat the day before the shooting, the username "LA Capone" exchanged messages with "Dreadhead Brian." LA Capone's messages included the statements "Man this s*** be so hard, cause I'm in the gang s*** very deep," and "if it was any other gang, it would be easy. But this MKZx, I love this M-O-B. I put in the work for this M-O-B. It got to the point where all I know is this." The same day, the phone user sent a text message to "Little Rick" asking, "you got 40 shells, right *** I need a dub of them."

¶ 10    About an hour after the shooting, "Doiboi" sent the phone a text message asking, "Who crib you at?" In the ensuing exchange, the phone user stated, "[I]t was an emergency *** I'm not in a crib. It's a little room or something I'm stashed in.," and attached a photo of a small room.

¶ 11    Minutes later, the phone user searched Google for "shooting on Menard and Patterson" and "Chicago shooting on Menard and Patterson."[3] The user then searched both Google and Facebook for "Giovanni Matos" and "Gio Matos."

---

[3]Matos was shot on West Patterson Avenue in Chicago.

¶ 12        A text message from "Moises" that evening asked, "You got it on you?" The user replied, "Yeah." In a subsequent exchange with "Gucci," the user wrote, "Royal down." In a text exchange the following day, "Cisco" stated he was "tryna hunt opps down. Lemme hold banger." The user replied, "you can't Folkz you need somebody with you ain't no dues in for you." A few days later, "Lil King" asked, "What's up with the Royals?" The user responded, "We Royal killa." In a Facebook chat, "Rat Boy Phil" asked LA Capone whether he "used to be a LB?" LA Capone replied, "yeah *** They called me B-Boy."

¶ 13        Defense counsel argued these materials should be excluded for several reasons: their relevance relied on speculation, such as interpreting "banger" to mean firearm or "stashed" to mean hiding; the messages were prejudicial since they referred to other crimes and gang activity; and the evidence was cumulative of the anticipated testimony regarding Elliott's and Matos's respective gang affiliations. The trial court rejected these contentions, finding the evidence relevant and not unduly prejudicial. Subsequently, the evidence from Elliott's cell phone was admitted at trial. Two eyewitnesses identified Elliott as Matos's shooter. The jury found Elliott guilty of first degree murder.

¶ 14        Following the verdict, Elliott's trial counsel filed a motion for new trial. At a subsequent court date, new counsel, whom Elliott had privately retained, appeared on his behalf and the APD withdrew. The court commented:

>        "THE COURT: It always tickles me. Goes to trial with a good lawyer, can't afford a lawyer. [The APD] is a fine lawyer from the PD's office. Then he's found guilty. Now he can afford to hire a lawyer.
>
>        What have you done for me lately? That sometimes happens.
>
>        Mr. [APD], you're granted leave to withdraw. All of that work."

At a later status hearing, the court stated:

> "THE COURT: Just a second. Elliott was found guilty previously - - with another attorney - - of murder. It often is the case they can't afford a lawyer and want to go to trial with a Public Defender. It's not what they really want and then they want to hire a private attorney at that point. It's kind of weird."

During Elliott's sentencing hearing, the court recounted information from a pre-sentence investigation (PSI), adding the following remark:

> "THE COURT: According to [Elliott] and the PSI, he was formerly a member of a gang. He was formerly a member. Is anybody ever really a member at the time of a murder [sentencing]? He's a former member. They get religion in the jail, apparently. Now he's a former member.
>
> In the PSI one of the pages he refers to – I don't want to take it out of context – Oh, he left the Kings when he was incarcerated in this case because he wanted to quote/unquote stay out of trouble."

The court sentenced Elliott to a 70-year prison term.

¶ 15    We affirmed Elliott's conviction and sentence on direct appeal. *Elliott*, 2022 IL App (1st) 192294. Later, Elliott filed a *pro se* postconviction petition claiming, *inter alia*, that his appellate counsel was ineffective for failing to (1) challenge the trial court's admission of evidence from his cell phone and (2) argue that the trial court was biased based on the post-trial comments cited above. Elliott's petition included a list of 19 supporting exhibits, but only one—his own affidavit—was attached to the petition filed on the record. The circuit court summarily dismissed the petition by written order, finding Elliott's claims frivolous and patently without merit. This appeal followed.

¶ 16                                    II. ANALYSIS

¶ 17          The Post-Conviction Hearing Act (Act) (725 ILCS 5/121-1 *et seq*. (West 2022)) enables an imprisoned person to file a petition to assert that a substantial denial of constitutional rights occurred in their trial proceedings. *People v. Coleman*, 2013 IL 113307, ¶ 81. A petition for postconviction relief is not an appeal, but a collateral proceeding to permit inquiry into constitutional issues that escaped earlier review. *People v. Blair*, 215 Ill. 2d 427, 447 (2005). The Act provides for up to three stages of proceedings. *People v. Harris*, 2025 IL 130351, ¶ 32. At the initial stage, the circuit court reviews a petition independently. *People v. Hommerson*, 2014 IL 115638, ¶ 7. If the petition is determined to be frivolous or patently without merit, the court summarily dismisses the petition by written order. *Id*. A petition is frivolous or patently without merit when its claims lack an arguable basis in law or fact. *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009). To survive summary dismissal, the petition and its supporting documents must allege sufficient facts to make out an arguable constitutional claim. *Id*. at 9. We review the circuit court's dismissal of a petition at the first stage *de novo*. *Id*.

¶ 18                                    A. Gang Evidence

¶ 19          First, Elliott contends his petition alleged an arguable claim that his appellate counsel was ineffective by failing to challenge the trial court's admission of gang-related evidence obtained from his cell phone. The fourteenth amendment provides the right to the effective assistance of appellate counsel. *People v. Stockton*, 2018 IL App (2d) 160353, ¶ 15. We evaluate claims of ineffective assistance of appellate counsel by the same two-part test for claims of ineffective assistance of trial counsel. *People v. Golden*, 229 Ill. 2d 277, 283 (2008). The defendant must establish that both (1) appellate counsel's performance was deficient and (2) defendant was prejudiced as a result. *Id*. Counsel's performance is deficient when counsel's decisions were

objectively unreasonable. *Id*. Prejudice is shown when there is a reasonable probability that, but for appellate counsel's errors, the appeal would have been successful. *Id.* When a defendant's claim is based on appellate counsel's failure to include an issue, we evaluate prejudice by considering the merits of the claim not raised by appellate counsel. *People v. Delgado*, 2022 IL App (2d) 210008, ¶ 26. Thus, we inquire whether Elliott's appeal would have succeeded had appellate counsel challenged the trial court's admission of the gang-related evidence from Elliott's cell phone.

¶ 20        Evidence that a defendant was a gang member or involved in gang-related activities may be admitted so long as it is relevant to an issue in dispute and its probative value is not substantially outweighed by its prejudicial effect. *People v. Johnson*, 208 Ill. 2d 53, 102 (2003). Gangs are regarded with considerable disfavor, and evidence of a defendant's gang membership may engender unfair prejudice. *People v. Morales*, 2012 IL App (1st) 101911, ¶ 40. Therefore, the trial court must exercise care to prevent the jury from assuming a defendant is guilty based on gang membership. *People v. Matthews*, 299 Ill. App. 3d 914, 923 (1998). For the court to admit gang-related evidence, the State must present sufficient proof that the defendant's gang membership is related to the crime charged. *Johnson*, 208 Ill. 2d at 102. For instance, gang-related evidence is admissible to show a common purpose or design or to provide a motive for an otherwise inexplicable act. *People v. Roman*, 2013 IL App (1st) 110882, ¶ 24 (citing *People v. Smith*, 141 Ill. 2d 40, 58 (1990)). Ultimately, gang-related evidence is relevant if it tends to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Johnson*, 208 Ill. 2d at 102. The circuit court's rulings with respect to gang-related evidence are reviewed for abuse of discretion. *Id*.

¶ 21    Elliott asserts the trial court's admission of his cell phone evidence was unduly prejudicial. He argues that Figueora's testimony was sufficient to establish a rivalry between his and Matos's respective gang affiliations and provide a motive for the shooting. Thus, he contends, the evidence from his cell phone was unnecessary, cumulative, and only served to prejudice him.

¶ 22    We disagree. Motive is not the sole basis for admission of gang-related evidence. It is admissible if relevant and probative of any fact of consequence in the case. *Id*. Here, the evidence from Elliott's cell phone was probative of whether he was the individual who shot Matos. The day before the shooting, Elliott said he "put[s] in work" for the Milwaukee Kings and asked for "shells." From his words, a factfinder could infer that Elliott was expressing an intent to commit a shooting on behalf of the gang. After the shooting, he said he was "stashed" in a small room. This could be construed as Elliott saying he was hiding to avoid apprehension or retaliation. Later, Elliott searched for news reports about the shooting using the victim's name and shooting location, revealing Elliott had both a keen interest in and detailed knowledge about the shooting. He also appeared to celebrate that a Royal was "down" and seemed to take credit for being a "Royal killa." Subsequent messages in which Elliott confirmed he had "it on [him]" and refused an apparent fellow gang member's request to hold the "banger" to "hunt opps down" could be taken to mean Elliott possessed a firearm the gang used for shootings at that time. In another message, Elliott stated he was formerly a Latin Brother known as B-Boy, corroborating details Figueora gave in his identification of the shooter. Thus, the evidence from Elliott's cell phone tended to make it more probable that he committed the shooting. Its probative value was not substantially outweighed by its prejudicial effect, and the trial court did not abuse its discretion by admitting the evidence.

¶ 23     For these reasons, the evidence from Elliott's cell phone is unlike the evidence this court found unduly prejudicial in *People v. Woodson*, 2023 IL App (1st) 191353, which Elliott cites. In *Woodson*, the defendant was charged with first degree murder and other offenses stemming from a shooting on a street in Evanston, Illinois. *Id*. ¶ 1. The State's theory of the case was that the defendant shot at a group of young men under the mistaken belief they were members of a rival gang. *Id*. ¶ 6. At trial, to show a conflict between rival gangs, the State presented evidence that the defendant was previously shot and his cousin was stabbed by rival gang members. *Id*. ¶ 103. In addition, however, the State introduced more than a dozen gang-related crimes that the defendant was not involved in. *Id*. ¶ 98. We found the trial court abused its discretion by admitting the additional gang-related evidence, since "[a] description of numerous other bad acts and gang events, which defendant was not a part of, was far more prejudicial than probative and simply not necessary to the case at bar." *Id*. ¶ 103.

¶ 24     Here, by contrast, the evidence from Elliott's cell phone was his own communications, revealing his own conduct. And the messages referring to possessing a firearm and the prospect of a future shooting by the gang member "tryna hunt opps down" were not wholly other crimes, in which Elliott had no part. Moreover, as we explained, the communications were probative of whether Elliott was the person who shot Matos. Accordingly, the cell phone evidence was not prejudicial like the unnecessary evidence in *Woodson*.

¶ 25     In sum, we find this claim is without merit. Accordingly, there is no reasonable probability that Elliott's appeal would have succeeded had appellate counsel included the issue and, therefore, Elliott failed to set forth an arguable postconviction claim of ineffective assistance of appellate counsel.

¶ 26                                    B. Judicial Bias

¶ 27        Next, Elliott contends he made an arguable claim that his appellate counsel was ineffective for failing to raise judicial bias on direct appeal. At the outset, we observe that this claim, as set forth in Elliott's appellate brief, differs from Elliott's *pro se* petition. Elliott alleged that the trial judge demonstrated bias in two ways: (1) commenting and ruling on the admission of evidence obtained from the cell phone and (2) by commenting on Elliott's new post-trial counsel and his PSI. See *supra* ¶ 14. He then argued that he was prejudiced as a result: the admission of the cell phone evidence deprived him of a fair trial, and the trial judge did not treat him fairly in sentencing.

¶ 28        On appeal, however, postconviction appellate counsel recharacterized the first part of Elliott's claim as ineffective assistance of counsel for failing to challenge the admission of the cell phone evidence as gang-related. This recharacterization was acceptable, as it was consistent with Elliott's factual allegations. When reviewing a *pro se* petition at the first stage, we are concerned primarily with the petitioner's factual allegations, which are to be given liberal construction. *Hodges*, 234 Ill. 2d at 21. Legal labels are less important. So, on appeal from the summary dismissal of a *pro se* petition, appellate counsel may argue that the petitioner's factual allegations support a different legal theory from the one the petitioner asserted. *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 79 (citing *Hodges*, 234 Ill. 2d 1).

¶ 29        As to the second part of Elliott's claim, postconviction appellate counsel included numerous other remarks from the record to support that the trial judge exhibited bias and, therefore, appellate counsel was ineffective for failing to raise the issue on direct appeal. Unlike the recharacterization of Elliott's *pro se* claim regarding evidence from his cell phone, this argument is inconsistent with Elliott's factual allegations. Elliott alleged that the trial judge developed a specific bias in response to his procurement of private post-trial counsel: the judge "ridiculed"

Elliott's social and financial situation and "insulted" his effort to fight for his freedom. Elliott further alleged that the trial judge "set his mind to rule against" his motion for a new trial after Elliott hired a private lawyer, since the trial judge appeared to prefer APDs. Separately, Elliott alleged the trial judge's comments regarding his PSI demonstrated that the judge "could only see him as a worthless gang member that should never try to advance in life." He added that the judge assessed his "ambition to do better through spirituality was fake." Thus, Elliott contends, the court "disregarded" his rehabilitative potential at sentencing. By contrast, Elliott's appellate brief cites remarks the court made toward trial counsel during pretrial hearings and at *voir dire*, as well as other comments made at sentencing, to argue that the trial judge created a general appearance of bias.

¶ 30        Claims of judicial bias must be viewed in context, especially the trial judge's specific reaction to the events taking place, *People v. Urdiales*, 225 Ill. 2d 354, 426 (2007). Elliott's brief, however, does not merely add context to the remarks his petition alleged as biased. Rather, it adds new allegations for the first time on appeal. See *People v. Cole*, 2012 IL App (1st) 102499, ¶ 13 ("[C]laims not raised in the defendant's postconviction petition may not be raised for the first time on appeal from the circuit court's dismissal of that petition."). This is improper. "Postconviction appellate counsel may not present novel arguments that bear no relationship to the petition." *Thomas*, 2014 IL App (2d) 121001, ¶ 86. Doing so "substitute[s] appellate advocacy for second-stage postconviction proceedings in the trial court, where counsel is appointed and the petition may be amended." *Id*. Thus, we limit our consideration of this issue to the allegations in Elliott's *pro se* petition.

¶ 31        A trial judge is presumed to be impartial, and the party challenging a judge's impartiality bears the burden of overcoming this presumption. *People v. Romero*, 2018 IL App (1st) 143132,

¶ 96. To show bias, defendant must demonstrate that the judge displayed "active personal animosity, hostility, ill will, or distrust toward the defendant." (Internal quotation marks omitted.) *Id*. However, "a judge's opinions based on trial facts and events during the proceedings, as well as any critical, disapproving, or hostile remarks, do not support a bias or partiality challenge." *People v. Cummings*, 2023 IL App (1st) 220520, ¶ 50. A judge's remarks will only support a finding of bias if they " 'display a deep-seated favoritism or antagonism that would make fair judgment impossible.' " *Id*. (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

¶ 32        In our view, the trial judge's comments did not arguably rise to the level of reversible error. " '[F]or a trial judge's comments to constitute reversible error, a defendant must demonstrate that the comments constituted a material factor in the conviction or were such that an effect on the jury's verdict was the probable result.' " *People v. Barnes*, 2017 IL App (1st) 143902, ¶ 60 (quoting *People v. Harris*, 123 Ill. 2d 113, 137 (1988)). The comments here occurred after a jury found Elliott guilty. Thus, they could not have been a material factor in the determination of guilt. Nor are we persuaded that the comments were a material factor in the judge's denial of his motion for a new trial. Elliott's allegation that the trial judge prejudged his motion for a new trial because Elliott discharged the APD and hired a new lawyer is purely speculative and unsupported. The trial judge did not ridicule Elliott's social status or financial situation, nor did he insult Elliott's effort to defend himself. Rather, the trial judge appeared to make a general observation that defendants often seek new counsel after conviction, under the perception that private counsel is more competent than the APD, despite previously requesting the APD to represent them at trial. As to the remark about "getting religion" in jail, the context demonstrates that the trial judge was not referring to actual religious practice, but the renunciation of gang membership after being charged with a crime. This remark occurred during Elliott's sentencing hearing amid the trial court's

explanation of its assessment of evidence and the factors affecting its sentencing decision. At that time, the court had the duty to weigh numerous factors, and it was within the court's discretion to give Elliott's gang renunciation little weight.

¶ 33 For these reasons, we find that a claim of judicial bias is without merit, and appellate counsel was not arguably ineffective for failing to raise this issue on direct appeal.

¶ 34 C. Missing Exhibits

¶ 35 Separately, Elliott argues the trial court erred in dismissing his petition, since all but one of the 19 exhibits he listed were absent from the record. He requests that we vacate the dismissal order and remand for a new first-stage review of the petition with the exhibits.

¶ 36 First, we note that the Act requires a petitioner to attach supporting "affidavits, records, or other evidence" or explain why such evidence is not attached. *People v. Collins*, 202 Ill. 2d 59, 65 (2002) (citing 725 ILCS 5/122-2 (West 2024)). The failure to do either justifies summary dismissal. *Id*. at 66.

¶ 37 Second, a review of Elliott's list of exhibits reveals that their absence did not inhibit the trial court's review of his petition. Nearly all the 19 listed items were already of record in the case and accessible to the court. Eleven were portions of transcripts from the trial proceedings, and Elliott reproduced the relevant portions in his petition. One item was a copy of a filed pre-trial motion to suppress evidence. Another item consisted of copies of the evidence obtained from his cell phone, which were already in the record. Elliott further listed a "grand jury subpoena and court order" and "case supplementary report." His own affidavit was listed and included with the petition. Elliott also listed a 2020 decision from the Colorado Supreme Court. The decision was not attached, but he included the case citation, making it accessible. In addition, the decision was not cited as evidence but as legal authority to support one of Elliott's claims.

¶ 38    The only item listed that was neither attached nor accessible to the court was an affidavit from Diana Mercado. Elliott's petition claimed his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to call Mercado to testify at trial. Before trial, Elliott filed an answer to the State's motion for discovery, indicating he might assert an alibi defense and call Mercado to testify he was in a car with her in the vicinity of North Long Avenue and Augusta Boulevard (Long and Augusta) at the time of Matos's shooting. Elliott's petition asserted that she would have so testified and referenced an affidavit from Mercado. The trial court noted that no affidavit from Mercado was attached but found the claim meritless nonetheless, since Mercado's testimony would not have likely changed the outcome at trial. The trial evidence established that the shooter was a car passenger and Long and Augusta is not far from the shooting location. So, Mercado's testimony tended to support the State's theory of the case rather than provide an alibi. Since the substance of Mercado's testimony was already in the record, the absence of the affidavit did not inhibit the court from evaluating Elliott's claim. In any event, a petitioner need not attach an affidavit from a witness to support a claim based on trial counsel's failure to call the witness when, as here, other material in the record indicates how the witness would have testified. *People v. Dupree*, 2018 IL 122307, ¶¶ 41-42.

¶ 39    For these reasons, we find that a remand for new first-stage proceedings is unwarranted.

                                III. CONCLUSION

¶ 41    Based on the foregoing, we find that Elliott's postconviction petition failed to make an arguable claim and affirm the circuit court's summary dismissal.

¶ 42    Affirmed.